NOTICE

Decision filed 05/01/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250115-U

NO. 5-25-0115

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| MICHELLE MITCHELL, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | Nos. 23-LA-1147 & |
| | ) | 23-LA-1183 |
| DEANNA G. HART, 1 B.A.B.E. TRUCKING LLC, FOB | ) | |
| TRUCKING, ADM LOGISTICS, INC. and | ) | |
| ARCHER-DANIELS MIDLAND CO., Defendants, | ) | |
| (ADM Logistics, Inc. and Archer-Daniels-Midland Co., | ) | |
| Defendants-Appellants), | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BRANDON HANCOCK, Individually, as Next Friend and | ) | |
| Special Administrator of the Estate of | ) | |
| Bryson Paintner, deceased, BRANDON HANCOCK | ) | |
| as Next Friend of A'Staire Hancock, AARON HOPKINS, | ) | |
| Individually, as Next Friend and as Special Administrator | ) | |
| of the Estate of Heaven-Leigh Mitchell, deceased, and | ) | |
| CHRISTIAN PAINTNER, | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEANNA G. HART, 1 B.A.B.E. TRUCKING LLC, FOB | ) | |
| TRUCKING, ADM LOGISTICS, INC., | ) | |
| ARCHER-DANIELS-MIDLAND CO., and MICHELLE | ) | |
| MITCHELL, Defendants, | ) | Honorable |
| (ADM Logistics, Inc. and Archer-Daniels-Midland Co., | ) | Christopher T. Kolker, |
| Defendants-Appellants). | ) | Presiding Judge. |

_____

1

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justices Barberis and McHaney concurred in the judgment.

## ORDER

¶ 1    *Held*:    The circuit court did not abuse its discretion when it denied the moving defendants' motion to transfer the plaintiffs' cases to Massac County pursuant to the doctrine of intrastate *forum non conveniens* where the movants failed to show that the plaintiffs' chosen forum was inconvenient to them and Massac County was more convenient to all parties.

¶ 2    The plaintiff, Michelle Mitchell, filed a negligence action in the circuit court of St. Clair County, against the defendants, Deanna G. Hart, 1 B.A.B.E. Trucking LLC, FOB Trucking,[1] ADM Logistics, Inc., and Archer-Daniels-Midland Co., seeking damages for personal injuries she sustained when a tractor trailer driven by defendant Hart veered into Mitchell's lane of travel, causing Mitchell's vehicle to leave the roadway and crash. A separate case was filed in St. Clair County by or on behalf of the occupants of Mitchell's vehicle. In that case, Brandon Hancock, Individually, as Next Friend and Special Administrator of the Estate of Bryson Paintner, deceased, Brandon Hancock as Next Friend of A'Staire Hancock, Aaron Hopkins, Individually, as Next Friend and Special Administrator of the Estate of Heaven-Leigh Mitchell, deceased, and Christian Paintner brought claims for wrongful death and negligence against the same defendants and Mitchell. The cases were consolidated for purposes of discovery. Defendants ADM Logistics, Inc. and Archer-Daniels-Midland Co. (collectively "ADM") filed a motion to transfer the actions to Massac County pursuant to the doctrine of intrastate *forum non conveniens*. The circuit court denied ADM's motion to transfer. ADM filed a petition for leave to appeal under Illinois Supreme Court Rule 306(a)(2) (eff. Jan. 1, 2016) and argued that the circuit court abused its discretion in

---

[1]After these actions were filed, FOB Trucking was identified as a division of ADM, and not a separate corporate entity. Accordingly, we will not refer to this entity in this order.

2

denying their motion to transfer. We allowed the defendants' petition. For the following reasons, we affirm.

¶ 3                                                   I. BACKGROUND

¶ 4     The following information is derived from the pleadings and exhibits in the record. On the afternoon of June 28, 2017, Michelle Mitchell was driving her four children, A'Staire Hancock, Bryson Paintner, Heaven-Leigh Mitchell, and Christian Paintner, along with Christian's friend, Tianna Hall, to an amusement park in Eureka, Missouri. Mitchell's route took the group from her residence in Mayfield, Kentucky, into Illinois on westbound Interstate 24. Interstate 24 is a divided highway with a grass median separating its two eastbound lanes from its two westbound lanes. Mitchell was traveling in the left lane of westbound Interstate 24, near milepost 32, in Massac County, Illinois, when she came upon a 1 B.A.B.E. Trucking tracker trailer driven by Deanna G. Hart. The tractor trailer was traveling in the right lane of westbound Interstate 24. As Mitchell started to pass the tractor trailer, it veered into Mitchell's lane of travel, causing Mitchell to drive off the roadway and into the center median of the highway. Mitchell's vehicle proceeded more than 341 feet in the median before contacting a concrete retaining structure that propelled the vehicle airborne. The vehicle struck a bridge face and a bridge support before crashing into the concrete embankment and coming to rest in the concrete ravine at the base of the bridge. Hart did not stop. She continued to travel west on Interstate 24. She was eventually stopped by the Illinois State Police in Pana, Christian County, Illinois, about 175 miles from the crash site.

¶ 5     First responders arrived at the crash site to render assistance. Mitchell's 12-year-old daughter, Heaven-Leigh Mitchell, was pronounced dead at the scene. Mitchell's eight-year-old son, Bryson Paintner, sustained serious injuries. He was transported to a hospital and later died from his injuries. Mitchell, her daughter A'Staire Hancock (age 7), her son Christian Paintner (age

3

17), and Tianna Hall (age 14) were transported to local or regional hospitals where they were treated for serious injuries and survived.

¶ 6    The Illinois State Police responded and conducted the investigation of the crash. Trooper Daniel Broadwater of the Illinois State Police was assigned as the initial investigator. He prepared an Illinois Traffic Crash Report. Trooper Wayne Hocking, a member of the Illinois State Police Traffic Crash Reconstruction Unit, was dispatched to the crash site. He conducted a crash reconstruction investigation and prepared a report. Trooper James Holliday met with Hart, reviewed her driving log, and conducted an inspection of Hart's tractor trailer. He prepared a Driver/Vehicle Inspection Report and documented violations of the motor carrier laws by Hart and 1 B.A.B.E. Trucking. Special Agent Erik Bethel interviewed eyewitnesses, including Karley Heath (Heath), Christian Paintner, Tianna Hall, and Michelle Mitchell.

¶ 7    Six persons were listed as potential witnesses in the traffic crash reconstruction report: Heath, Murphysboro, Illinois; Laura Reedy (Reedy), Paducah, Kentucky; Thomas D. Hennessee, Rowlett, Texas; Mark A. McGlawn, Granite City, Illinois; Ronld C. McDaniel, Statesboro, Georgia; and Curtis Miller, Farmer City, Illinois. Heath and Reedy were identified as eyewitnesses to the incident. Heath was driving behind Mitchell's vehicle, and she took photos of the tractor trailer and its registration information.

¶ 8                      Plaintiffs' Causes of Action

¶ 9    On March 16, 2018, Brandon Hancock, individually and as Next Friend and Special Administrator of the Estate of Bryson Paintner, filed an action against Hart and 1 B.A.B.E. Trucking in the circuit court of Massac County. In April 2019 Brandon Hancock filed an amended complaint adding additional plaintiffs and defendants. In the amended complaint, Brandon Hancock, Individually, as Next Friend and Special Administrator of the Estate of Bryson Paintner,

4

deceased, Brandon Hancock as Next Friend of A'Staire Hancock, Aaron Hopkins, Individually, as Next Friend and Special Administrator of the Estate of Heaven-Leigh Mitchell, deceased, and Christian Paintner (collectively "Hancock plaintiffs"), brought counts for wrongful death and negligence against Hart, 1 B.A.B.E Trucking, ADM, and Mitchell. On May 23, 2019, Mitchell filed a personal injury action against Hart, 1 B.A.B.E Trucking, and ADM in Massac County.[2] In June 2019 the Massac County circuit court consolidated these actions for discovery. Subsequently, the parties engaged in written discovery and obtained depositions from the parties and some of the occurrence witnesses. According to a docket entry dated January 23, 2023, the Massac County circuit court held a status conference and advised the attorneys that the court was unable to give a 2024 jury trial date.[3] In May 2023 Mitchell and the Hancock plaintiffs filed motions for voluntary dismissal of their respective actions. On July 24, 2023, the Massac County circuit court dismissed Mitchell's action and the Hancock plaintiffs' action without prejudice.

¶ 10     On October 6, 2023, Mitchell brought this action against Hart, 1 B.A.B.E. Trucking, and ADM in the circuit court of St. Clair County. According to the general allegations in the complaint, for several months leading to the crash, Hart drove a tractor trailer for 1 B.A.B.E Trucking and almost exclusively hauled ADM products from ADM's facility in Decatur, Illinois. Hart was an agent and employee of 1 B.A.B.E. Trucking, and Hart and 1 B.A.B.E. Trucking were agents of ADM. It was further alleged that on and around June 27, 2017, ADM hired or selected 1 B.A.B.E. Trucking for commercial trucking and transportation services, and then instructed, supervised, and guided 1 B.A.B.E. Trucking's decision. In the allegations against Hart, Mitchell alleged that on

[2]On June 27, 2022, Tianna Hall brought her own personal injury action against Hart, 1 B.A.B.E. Trucking, ADM, and Mitchell in the circuit court of Massac County. Hall's action was not consolidated with the actions by Mitchell and the Hancock plaintiffs.
    [3]The docket entry sheets from the consolidate actions in Massac County are part of the record on appeal.

June 28, 2017, Hart operated her tractor trailer in a negligent and careless manner and that Mitchell sustained injuries proximately caused by Hart's negligence. At that time, Hart was an agent and employee of 1 B.A.B.E. Trucking, and that Hart and 1 B.A.B.E. Trucking were agents of ADM. Mitchell brought individual counts against 1 B.A.B.E. Trucking and ADM under theories of vicarious liability, negligent entrustment, negligent hiring and retention, negligent supervision, negligent training, and *respondeat superior*.

¶ 11     On October 16, 2023, the Hancock plaintiffs filed a complaint in the circuit court of St. Clair County against Hart, 1 B.A.B.E. Trucking, ADM, and Mitchell. The complaint included similar theories of liability against Hart, 1 B.A.B.E. Trucking, and ADM, as asserted in Mitchell's complaint, along with separate counts of negligence against Mitchell. In June 2024 the actions were consolidated for purposes of discovery.

¶ 12                         Intrastate *Forum Non Conveniens*

¶ 13     On February 21, 2024, ADM filed a motion to transfer Mitchell's action to Massac County on the basis that venue was improper in St. Clair County, and alternatively, under the doctrine of intrastate *forum non conveniens*. On June 10, 2024, ADM filed a nearly identical motion to transfer in the Hancock plaintiffs' action. In each motion, ADM initially claimed that the plaintiffs' choice of forum was entitled to no deference because the plaintiffs did not reside in St. Clair County and the action giving rise to the litigation did not occur in St. Clair County. ADM asserted that Massac County was obviously a convenient forum for the plaintiffs because they originally filed their respective cases in Massac County and those cases remained pending in Massac County for almost four years. ADM also asserted that the plaintiffs had engaged in forum shopping when they dismissed their actions in Massac County and refiled them in St. Clair County.

6

¶ 14    In addition, ADM claimed that based on the private and public interest factors, St. Clair County was not a convenient forum, and that the balance of all relevant private and public interest factors favored transfer back to Massac County. In addressing the private interest factors, ADM argued that the convenience of the parties favored Massac County because plaintiffs Mitchell, Christian Paintner, and Tianna Hall lived "across the river from Metropolis, the County Seat of Massac County;" that access to sources of evidence was much greater in Massac County because the incident occurred there and because emergency responders in Massac County attended to the injured parties; and that securing the attendance of non-party witnesses would be easier in Massac County because the first responders worked in the county and because a critical eyewitness resided in Murphysboro, which was closer to Massac County than St. Clair County. ADM also argued that Mitchell pleaded guilty to aggravated driving under the influence of drugs on the day of the crash, and that a jury should be able to view the pertinent portions of the highway to assess the extent of Mitchell's intoxication and to determine whether she was the sole proximate cause of the injury. As to the public interest factors, ADM claimed that the court docket in Massac County was less congested, that the controversy was localized because all aspects of the cause arose or accrued in Massac County, that the citizens of Massac County had a greater interest in deciding the case because it occurred in their county, and that first responders and known and unknown government witness from Massac County should not be required to travel to St. Clair County to testify. ADM attached copies of the Massac County circuit court's order granting the plaintiffs' motion for voluntary dismissal and Mitchell's guilty plea.

¶ 15    The plaintiff filed a joint response in opposition to ADM's motion. Therein, the plaintiffs initially argued that venue was proper in St. Clair County because ADM had facilities and conducted business in St. Clair County. The plaintiffs also argued that their choice of forum in St.

7

Clair County was entitled to some deference, that the location of the incident was fortuitous, that Massac County had proven to be "overwhelmingly inconvenient and ill equipped" to handle the litigation, and that none of the other defendants asserted St. Clair County was inconvenient to them. The plaintiffs claimed that ADM failed to meet its burden to show that St. Clair County was inconvenient to ADM and that Massac County was more convenient to all parties. In addressing the private interest factors, the plaintiffs identified the residence and/or offices of the parties and the witnesses. The plaintiffs argued that St. Clair County was geographically closer for nearly every potential witness and that St. Clair County was more convenient for out-of-state opinion witnesses because the county was served by multiple interstate highways and commercial airports. They further argued that St. Clair County was closer to the offices of the attorneys involved in the litigation. In addressing public interest factors, the plaintiffs argued that St. Clair County had an interest in deciding accountability for the incident because ADM was a resident and conducted business operations in the county and because ADM's drivers regularly traveled on roadways in St. Clair County. The plaintiffs also asserted that Massac County did not want the litigation on its docket. The docket sheets from the Massac County litigation were attached as a supporting exhibit. The plaintiffs concluded that ADM failed to establish that the relevant private and public interest factors strongly favored transfer to Massac County.

¶ 16    On December 12, 2024, the circuit court called ADM's *forum non conveniens* motion for hearing. The court heard arguments from counsel for ADM and the plaintiffs. Counsel for Hart and 1 B.A.B.E. Trucking appeared at the hearing but took no position on ADM's motion to transfer. Hart and 1 B.A.B.E. Trucking did not file a separate forum motion, and they did not join in ADM's motion. Thereafter, the court asked ADM and the plaintiffs to submit proposed orders and took the matter under advisement.

¶ 17     On January 14, 2025, Hart and 1 B.A.B.E. Trucking filed a memorandum in opposition to the plaintiffs' proposed order on ADM's motion to transfer venue.[4] Hart and 1 B.A.B.E. Trucking asserted that the suggestion that they were "satisfied" with St. Clair County as a venue was inaccurate. They acknowledged that they did not file a motion to transfer venue but indicated that they "consent" to a transfer to Massac County.

¶ 18     On January 27, 2025, the circuit court issued a written order containing its findings and analysis. Initially, the court considered ADM's contention that venue was not proper in St. Clair County. The court noted that under section 2-101 of the Code of Civil Procedure (Code) (735 ILCS 5/2-101 (West 2022)), every action must be commenced in the county of residence of any defendant who is joined in good faith or in the county in which the transaction or some part of the transaction occurred from which the cause of action arose. The court found that ADM had offices in and was a resident of St. Clair County, Illinois, and therefore, venue was proper under section 2-101 of the Code.

¶ 19     Next, the circuit court addressed ADM's *forum non conveniens* motion. The court initially determined that the plaintiffs' choice of forum should be accorded some minimal deference as opposed to none. Next, the court analyzed each of the relevant private interest factors and public interest factors. The court's detailed findings will be set forth in our discussion of this issue to avoid unnecessary repetition. The court concluded that when viewed under the total circumstances of the case, the balance of public and private interest factors did not strongly favor transfer and denied ADM's motion to transfer.

---

[4]The record on appeal does not include proposed orders by either ADM or the plaintiffs.

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, ADM claims the circuit court abused its discretion in denying ADM's motion

to transfer this case to Massac County under the doctrine of intrastate *forum non conveniens.* ADM

argues that that the case has no relationship to St. Clair County and that on balance the private and

public interest factors strongly favor transfer of this case to Massac County.

¶ 22    *Forum non conveniens* is an equitable doctrine founded on considerations of fundamental

fairness and sensible and effective judicial administration. *Langenhorst v. Norfolk Southern Ry.*

*Co.*, 219 Ill. 2d 430, 441 (2006). The doctrine presumes there is more than one forum with

jurisdiction and proper venue. *Peile v. Skelgas, Inc.*, 163 Ill. 2d 323, 336 (1994). Under the

doctrine, the circuit court may decline jurisdiction and transfer an action when it appears that

another forum can better serve the convenience of the parties and the ends of justice. *First America*

*Bank v. Guerine*, 198 Ill. 2d 511, 515 (2002). The circuit court has considerable discretion in ruling

on a *forum non conveniens* motion and the court's decision will not be reversed absent an abuse

of the court's discretion. *Langenhorst*, 219 Ill. 2d at 442. A court abuses its discretion when no

reasonable person would take the view adopted by the circuit court. *Langenhorst*, 219 Ill. 2d at

442. Our supreme court has repeatedly noted that a circuit court's discretionary power under the

*forum non conveniens* doctrine should be exercised only in exceptional circumstances when the

interests of justice require a trial in a more convenient forum. See *Langenhorst*, 219 Ill. 2d at 442;

*Guerine*, 198 Ill. 2d at 515; *Torres v. Walsh*, 98 Ill. 2d 338, 346 (1983).

¶ 23    In analyzing an intrastate *forum non conveniens* motion, the circuit court must evaluate the

total circumstances of the case and consider all relevant private and public interest factors without

emphasizing any single factor. *Langenhorst*, 219 Ill. 2d at 443. Private interest factors include the

convenience of the parties, the relative ease of access to sources of testimonial, documentary, and

10

real evidence, and all other practical considerations that make the trial of a case easy, expeditious, and inexpensive. *Langenhorst*, 219 Ill. 2d at 443. Public interest factors include the interest in deciding controversies locally, the unfairness of imposing the expense of a trial and the burden of jury duty on residents of a forum with little connection to the litigation, and the administrative difficulties presented by adding litigation to already congested court dockets. *Langenhorst*, 219 Ill. 2d at 443-44. The court does not weigh the private interest factors against the public interest factors. *Guerine*, 198 Ill. 2d at 518. Instead, the court evaluates the total circumstances of the case in determining whether the defendant has met its burden to prove that the balance of factors strongly favors transfer. *Guerine*, 198 Ill. 2d at 518. The court must consider all relevant factors without emphasizing any one factor. *Langenhorst*, 219 Ill. 2d at 443. Each *forum non conveniens* case is unique and must be considered on its own facts. *Langenhorst*, 219 Ill. 2d at 443.

¶ 24 The burden is on the defendant to show that the balance of relevant private and public interest factors strongly favors transfer. *Langenhorst*, 219 Ill. 2d at 444. In other words, the defendant must establish that the plaintiff's chosen forum is inconvenient to the defendant and that another forum is more convenient to all parties. *Guerine*, 198 Ill. 2d at 518. In doing so, the defendant may not argue that the plaintiff's chosen forum is inconvenient to the plaintiff. *Langenhorst*, 219 Ill. 2d at 444; *Guerine*, 198 Ill. 2d at 518.

¶ 25 An additional consideration is how much deference is owed to the plaintiff's choice of forum. *Guerine*, 198 Ill. 2d at 517. The plaintiff has a substantial interest in choosing the forum where his rights will be vindicated, and the plaintiff's choice of forum is entitled to substantial deference and should rarely be disturbed unless other factors strongly favor transfer. *Guerine*, 198 Ill. 2d at 517. That said, when the plaintiff chooses a forum other than his place of residence or the

11

location where some part of the action arose, the plaintiff's choice of forum is given somewhat less deference, as opposed to none. *Langenhorst*, 219 Ill. 2d at 448.

¶ 26                                    Plaintiffs' Choice of Forum

¶ 27    With these principles in mind, the first consideration is how much deference to give to the plaintiffs' chosen forum. ADM contends that the plaintiffs' choice of forum was entitled to no deference because it was the plaintiff's second choice of forum and because the cause of action did not arise and the plaintiffs did not reside in the chosen forum. ADM also contends that the circuit court erred in "totally discounting" the fact that the plaintiffs originally filed their respective cases in Massac County before dismissing those actions and refiling them in St. Clair County.

¶ 28    Initially, we note that throughout the appellant's brief, ADM claims that the plaintiffs engaged in forum shopping. Although forum shopping is disfavored whether it is engaged in by the plaintiff or the defendant (*Guerine*, 198 Ill. 2d at 521), a court may not consider this practice of "forum shopping" in a *forum non conveniens* analysis. See *Evans v. Patel*, 2020 IL App (1st) 200528, ¶ 33. Therefore, the circuit court properly noted that forum shopping was not a part of the court's analysis, and we decline to consider that portion of ADM's argument on appeal.

¶ 29    A review of the transcript from the hearing on the forum motion and the circuit court's written order shows the circuit court recognized that the plaintiffs originally filed their respective negligence actions in Massac County and that St. Clair County was the plaintiffs' second choice of forum. The circuit court considered the parties' conflicting assessments of the progress of the cases while they were pending in Massac County. The court reviewed the Massac County docket sheets and noted that the cases had been pending for four years and had not received a trial setting and that discovery motions had been filed and evidently not ruled on. Thus, there was some evidence that the progress of these cases and the parties' ability to obtain a jury trial in Massac

12

County was being hindered. The court also noted that the plaintiffs were not residents of St. Clair County, and that the accident did not occur in St. Clair County. Based upon the circumstances presented, the court correctly accorded the plaintiffs' choice of forum in St. Clair County "some minimal deference" as opposed to "none." See *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 25 (where plaintiff voluntarily dismissed his action in one forum and refiled in another forum and there was no indication that the parties' ability to conduct discovery and engage in pretrial matters was hindered by proceeding in the original forum, plaintiff's second choice of forum is accorded "diminished deference"). Accordingly, under the unequal balancing test, the battle over forum starts with the plaintiffs' choice of forum in a slight lead. *Guerine*, 198 Ill. 2d at 521.

¶ 30    ADM also contends that the circuit court erred in applying "equal weight" to each of the applicable private and public interest factors. In the preface to its analysis, the circuit court indicated that it afforded "equal weight" to each factor and did not emphasize or elevate one factor over another. Then, in the analysis, the court considered each private and public interest factor individually and determined that many factors weighed against transfer, strongly against transfer, or in favor of a trial in St. Clair County, that two weighed slightly in favor of transfer, and that one was neutral. Overall, the order demonstrates that the circuit court conducted a proper analysis, balancing the relevant public and private interest factors, without placing emphasis on any one factor, and evaluating the total circumstances of the case in determining whether ADM satisfied its burden to prove that the balance of relevant factors strongly favored transfer. *Langenhorst*, 219 Ill. 2d at 444. Therefore, this argument is without merit.

¶ 31    Next, we consider ADM's claim that the circuit court abused its discretion in denying ADM's motion to transfer the plaintiffs' cases to Massac County. ADM argues that the private

13

and public interest factors, when properly balanced together and viewed within the total circumstances of the case, strongly favor transfer.

¶ 32                                    Private Interest Factors

¶ 33    The first private interest factor concerns the convenience of the chosen forum for the parties. In its motion, ADM argued that based upon the private and public interest factors, St. Clair County was not a convenient forum. Notably, ADM did not specifically claim that St. Clair County was inconvenient to ADM. Instead, ADM argued that the convenience of the parties favored Massac County because "plaintiff currently lives across the river from Metropolis, the County Seat of Massac County, Illinois as does plaintiff/witness Christian Paintner and plaintiff/witness Tianna Hall." A defendant may not argue that the plaintiffs' choice of forum is inconvenient to them. *Langenhorst*, 219 Ill. 2d at 444. In other words, a party is not permitted to argue another party's convenience. *Johnson v. Nash*, 2019 IL App (1st) 180840, ¶ 42.

¶ 34    In analyzing the convenience of the parties, the circuit court noted that none of the parties resided or worked in Massac County. The court took judicial notice of the geographic distances of residence or employment of the parties and potential witnesses and laid out the following findings regarding the distances in its order. Archer-Daniels-Midland has its worldwide headquarters in Chicago, Cook County, Illinois, and its North America headquarters in Decatur, Illinois. Chicago is approximately 303 miles from the courthouse in St. Clair County and approximately 367 miles from the courthouse in Massac County. Decatur is approximately 125 miles from St. Clair County and 211 miles from Massac County. ADM also owned and operated major facilities and conducted significant activities in St. Clair County. In contrast, there was nothing in the record to indicate that ADM had a presence in Massac County. At least two of ADM's employees were likely to testify at trial. Lisa Jones resided in Springfield, Illinois and worked in Decatur, Illinois.

14

Springfield is approximately 103 miles from St. Clair County and 231 miles from Massac County. Keith Frantz resided in Lovington, Illinois and worked in Decatur, Illinois. Lovington is approximately 142 from St. Clair County and 192 miles from Massac County. ADM did not provide affidavits from these witnesses or any designated corporate witnesses averring that St. Clair County was inconvenient and that Massac County was more convenient.

¶ 35    The circuit court also found that Defendant Hart resided in Washington, Missouri, approximately 67 miles from St. Clair County and approximately 217 miles from Massac County. 1 B.A.B.E. Trucking, Tim Daniel, and Sandra Daniel lived in Beardstown, Illinois. Beardstown is approximately 126 miles from St. Clair County and 272 miles from the Massac County. Hart and 1 B.A.B.E. Trucking did not file a *forum non conveniens* motion and they did not join in ADM's motion to transfer. In addition, neither Hart, nor any representative of 1 B.A.B.E. Trucking claimed that a trial in St. Clair County was inconvenient and that a trial in Massac County would be more convenient. However, they indicated they would "consent" to a trial in Massac County.

¶ 36    The record shows that the residences of the defendants are spread among counties in Illinois and Missouri. None of the defendants have facilities, offices, or residences in Massac County. Based upon the circuit court's distance calculations, all defendants reside or have business operations closer to St. Clair County than Massac County. ADM did not expressly argue that St. Clair County was an inconvenient forum for it, and such suggestion would not have been well taken given that ADM resided and operated major facilities in St. Clair County. See *Kwasniewski v. Schaid*, 153 Ill. 2d 550, 555 (1992). ADM did not provide affidavits from any designated corporate witnesses stating that St. Clair County was inconvenient for them. Further, ADM did not demonstrate that a trial in Massac County would be more convenient for all parties. Having considered the above findings, along with the fact that St. Clair County is the plaintiffs' chosen

15

forum and the residence of one of the defendants, the circuit court concluded that the convenience-of-the-parties factor clearly weighed in favor of denying transfer. Based upon our review of the record, the circuit court did not abuse its discretion in determining that this factor did not strongly favor transfer.

¶ 37    The next private interest factor is the relative ease of access to sources of testimonial, documentary, and real evidence. ADM argued that access to sources of documentary and real evidence was much greater in Massac County because that was the location of the incident, the county where emergency responders attended to injured parties, and the county where plaintiff Mitchell was charged with and pleaded guilty to aggravated driving under the influence of drugs. However, ADM did not identify the emergency medical responders or any of the plaintiffs' medical care providers. Additionally, the plaintiffs' medical records and a certified copy of a conviction could be easily copied or scanned and offered at trial. ADM has not argued or shown that transportation of original records or other documentary evidence to the chosen forum would pose a significant burden.

¶ 38    A review of the record shows that the residences or offices of the occurrence witnesses and the investigating officers were in Illinois, Missouri, and Kentucky. The circuit court also took judicial notice of the distances these witnesses would be required travel for a trial in either St. Clair County or Massac County. Karley Heath and Laura Reedy witnessed the crash. Heath resided in Murphysboro, Illinois. Murphysboro is approximately 78 miles from St. Clair County, and 66 miles from Massac County. Reedy resided in Paducah Kentucky, which was approximately 14 miles from Massac County, and 160 miles from St. Clair County. Four additional witnesses were listed in the traffic crash reconstruction report, however there was no indication as to whether those witnesses would testify at trial and no indication as to the matters to which they might testify.

16

¶ 39 Trooper Hocking prepared a traffic crash reconstruction report, and Trooper Holliday prepared a report documenting violations of the motor carrier laws by Hart and 1 B.A.B.E. Trucking. Trooper Hocking and Trooper Holiday worked out of Illinois State Police District 16, in Litchfield. Litchfield is approximately 54 miles from St. Clair County and 178 miles from Massac County. Although not mentioned in the court's order, Agent Bethel interviewed some of the parties and occurrence witnesses. Agent Bethel worked out of DuQuoin, Illinois. DuQuoin is approximately 63 miles from St. Clair County and 78 miles from Massac County.

¶ 40 The circuit court determined that St. Clair County was geographically closer for most of the witnesses, and that overall, it would be easier and less expensive to secure the attendance of most of the witnesses in St. Clair County. The court found that St. Clair County was accessible by several highways, a major airport in St. Louis, a midsize airport in St. Clair County, and Amtrak train stations. There were ample nearby hotels and meeting venues for those witnesses requiring an overnight stay. The court noted that no witness had testified or filed an affidavit indicating that in his or her circumstance, a trial in St. Clair County would be more inconvenient to them than a trial in Massac County. In addition, current technology allows the parties to present witness testimony through video-recorded evidence depositions, and the court's available remote appearance technology allows the witnesses to present themselves live to the factfinder, no matter where the witness is physically located. See Ill. S. Ct. R. 45 (eff. Mar. 1, 2026); Ill. S. Ct. R. 241 (eff. Mar. 1, 2026). Based upon our review of the record, the circuit court did not abuse its discretion in determining that this factor did not favor transfer.

¶ 41 Another factor is the possibility of viewing the premises, if appropriate. ADM argued that the jury would need to see the area where Mitchell left the roadway and the area where her vehicle continued to travel before crashing and coming to rest in the ravine to determine whether

17

Mitchell's actions were the sole proximate cause of the accident. The circuit court noted that site visits by jurors were extremely rare. The court further noted that there was no evidence regarding whether this section of the highway and the crash site had substantially changed in the intervening years since the crash. This incident occurred on June 28, 2017, in a rural area of Massac County on Interstate 24. The Traffic Crash Reconstruction Unit of the Illinois State Police documented the crash site through aerial photographs and computer-generated diagrams and maps. Additional photographs were taken of roadway markings, the final resting place of the vehicle, and the general area. The report indicated there were no "environmental view" obstructions in the area of the crash. In this case, we agree with the circuit court's assessment, as it seems that a visit to the site of the crash while possible, is unlikely. A visit to a busy interstate highway would pose safety risks to the members of the jury, and such risks are eliminated by the use of the traffic accident reconstruction report and the testimony of Trooper Hocking. Based upon the record, the circuit court did not abuse its discretion in determining this factor "only slightly" favored transfer to Massac County.

¶ 42    The next factor is the availability of the compulsory process for securing unwilling witnesses. The circuit court noted that the potential witnesses live in Illinois, Missouri, and Kentucky. Whether the cases proceed in St. Clair County or Massac County, in-state witnesses will be subject to Illinois subpoenas, while out-of-state non-party witnesses will remain outside the compulsory process of the circuit courts of Illinois. The defendants and their officers, directors, and employees may be compelled to appear and produce relevant corporate documents and tangible things pursuant to notices under Illinois Supreme Court Rule 237(b) (eff. Oct. 1, 2021). Here, the circuit court did not abuse its discretion in finding that this factor was neutral.

¶ 43    Additional factors include the costs of obtaining the attendance of willing witnesses and any other factors that make a trial easy, expeditious, and inexpensive. The circuit court noted that travel would be required for the parties and many of the witnesses, including the parties' retained experts, regardless of the forum. The court found that there were more travel options and accommodations in or near St. Clair County, and that travel time and expense would be much less if the trial was held in St. Clair County. The record shows that many of the parties' attorneys are located closer to St. Clair County than Massac County. While this factor does not carry great weight, it remains a factor that falls within the practical considerations that make a trial easy, expeditious, and less expensive. Thus, the circuit court did not abuse its discretion in determining that the remaining private interest factors did not strongly favor transfer.

¶ 44                                    Public Interest Factors

¶ 45    We next consider the public interest factors. These include the interest in deciding controversies locally, the unfairness of imposing the expense of a trial and the burden of jury duty on residents of a forum that has little connection to the litigation, and the administrative difficulties presented by adding litigation to already congested court documents. *Langenhorst*, 219 Ill. 2d at 443-44. ADM argues that this is a localized controversy because all aspects of the case arose or accrued in Massac County, and therefore Massac County has a greater interest in deciding the case.

¶ 46    In its order, the circuit court recognized that though the crash occurred in Massac County, the incident was not a matter of interest only to the citizens of Massac County. The court noted that the location of the accident was "happenstance" as the plaintiffs and defendant Hart were only passing through Massac County to reach their final destinations outside Massac County. The court determined that St. Clair County hosted the interstate business operations of ADM, and that the citizens of St. Clair County had an interest in policing and mandating safe operations of the

19

commercial trucking operations by ADM and ADM's brokered vehicles. The court concluded that St. Clair County had as much of an interest as Massac County in deciding who was accountable for causing the crash and that it would not be unfair to impose jury duty on the citizens of St. Clair County. Based on this record, we cannot say that the circuit court abused its discretion in finding that these factors did not favor transfer.

¶ 47 The final public interest factor involves administrative concerns presented by adding litigation to already congested court dockets. Although ADM mentioned this factor in its motion to transfer, it simply argued that the court is less congested in Massac County, without developing the argument or providing any factual support for its position. In its appellant's brief, ADM first referenced the Illinois Courts Statistical Summary Annual Report for the year 2023, and noted at the end of 2023, there were 5,675 cases pending in Massac County and 100,994 in St. Clair. ADM also pointed out the average time lapse between the filing and the jury verdict in jury trial cases in Massac County was 13.5 months, compared with 35.2 months in St. Clair. However, ADM failed to point out that those 2023 statistics showed that only 2 civil cases were tried to a jury verdict in Massac County as compared with 19 civil cases in St. Clair County. The Illinois Supreme Court has often noted that court congestion is " 'a relatively insignificant factor, especially where the record does not show the other forum would resolve the case more quickly.' " See *Langenhorst*, 219 Ill. 2d at 451-52 (quoting *Guerine*, 198 Ill. 2d at 517).

¶ 48 The circuit court was in the best position to consider any administrative problems in relation to its own docket and its ability to try the case in an expeditious matter. *Langenhorst*, 219 Ill. 2d at 451. The circuit court stated that St. Clair County was a much larger county, that it docketed more cases than Massac County, and that it could provide a trial date without delay. The court noted that St. Clair County had a healthy history of handling multiple mass and class action

cases, that it had 20 judges overseeing the dockets, and that it had the facilities, equipment and technological resources to expeditiously resolve cases involving complex issues and multiple parties. The court indicated that it was willing and able to schedule a jury trial as soon as the attorneys announced they were ready and that it had already set a trial date in the cases at bar. The circuit court also recognized that St. Clair County courtrooms were equipped with modern technologies, including Elmos, video screens, computer connection equipment, scanners and copiers, and noise cancelling capability for side bars. In contrast, there was no evidence in the record regarding whether Massac County had similar resources and similar experiences with complex litigation. The court noted that these cases had been pending in Massac County for years without a trial setting. Based upon the record, the circuit court did not abuse its discretion in finding that this factor favored conducting a trial in St. Clair County.

¶ 49    This is a case in which the parties and the potential witnesses are scattered among several counties in Illinois as well as Missouri and Kentucky. Upon reviewing the record, we conclude that the circuit court carefully balanced the public and private interest factors. The circuit court determined that ADM failed to meet its burden to show that St. Clair County was inconvenient to it and that Massac County was more convenient to all parties. ADM did not establish that under the circumstances of this case, the balance of private and public interest factors strongly favored transfer to Massac County. Therefore, we do not find that the circuit court abused its discretion in denying the motion to transfer venue under the doctrine of intrastate *forum non conveniens*. This is not a case where the court acted arbitrarily, without employing conscientious judgment, or where the court's decision exceeded the bounds of reason.

¶ 50    Finally, we note that counsel for the plaintiffs filed an unopposed motion to correct a misstatement made at oral argument. The motion was taken with the case and is hereby granted.

21

¶ 51                              III. CONCLUSION

¶ 52    For the reasons stated, the judgment of the circuit court is affirmed.


¶ 53    Affirmed.